[No. 14613. Department Two. March 6, 1918.]

THE STATE OF WASHINGTON, *Respondent,* v.
J. L. ROBERTS, *Appellant.*[1]

INDICTMENT AND INFORMATION—DUPLICITY—GRAFTING. Rem. Code,
§ 2333, denouncing three methods of committing the offense of
"grafting" does not define three crimes, and an information charg-
ing the offense in the specific language of the first clause by causing
a judge to "refuse, neglect or defer the performance of any official
duty" is not objectionable as covering also the third clause relating
to influencing an officer "in respect to any act . . . or other pro-
ceeding."

CRIMINAL LAW—TRIAL—ELECTION—ALTERNATIVE CHARGES—GRAFT-
ING. In a prosecution charging grafting in agreeing to either influ-
ence a judge to dismiss a criminal action or to influence a delay
in the proceedings, it is not error to refuse to require an election be-
tween the two, as the charge is not in the alternative, but is positive
that he agreed to do either one of two things, both denounced by the
statutes.

OBSTRUCTING JUSTICE—EVIDENCE—ADMISSIBILITY. Upon a charge
of grafting, evidence of a conversation had the day after the money
was paid is admissible as showing that the accused's attitude was
the same then as that testified to on the evening before when the
money was paid.

SAME—EVIDENCE — SUFFICIENCY. A charge of grafting is suf-
ficiently sustained where it appears that the accused induced the
payment to him of $210 upon his representation that he could get
a criminal prosecution dismissed through access which he had to
the trial judge.

CRIMINAL LAW—APPEAL—HARMLESS ERROR—FAVORABLE TO APPEL-
LANT. Upon a charge of grafting under the first clause of Rem.
Code, § 2333, error in instructions which defined grafting by adding
an exception not applicable to the first clause would be error favor-
able to the accused and not ground for reversal.

OBSTRUCTING JUSTICE—ELEMENTS OF OFFENSE. Under Rem. Code,
§ 2333, denouncing grafting by taking money under a promise to
exert influence upon a public officer, the intent to corrupt the of-
ficer is not the gravamen of the offense.

Appeal from a judgment of the superior court for
Pierce county, Clifford, J., entered June 20, 1917, upon
a trial and conviction of grafting. Affirmed.

[1]Reported in 171 Pac. 225.

*H. W. Lueders,* for appellant.

*Fred G. Remann* and *J. W. Selden,* for respondent.

ELLIS, C. J.—Defendant was prosecuted for the crime of grafting, under an information charging, in substance that, in Pierce county, Washington, on or about March 12, 1917, he received from Frank Barron $210, upon the representation that he could and would influence Judge E. M. Card to neglect and defer the performance of his duty as a judge of the superior court in the case of State v. Barron, then pending in the department of that court, in that county and state, presided over by Judge Card, in that he would influence Judge Card to dismiss that case or delay proceedings therein so that Frank Barron would receive no punishment in that cause, and that it was not clearly understood in good faith between Barron and defendant that no means or influence should be employed except explanation and argument upon the merits of the case.

Defendant demurred to the information on the grounds (1) that it "is not direct and certain as regards the crime charged," and that (2) it "does not state facts sufficient to constitute a public offense." The demurrer was overruled.

When the case was called for trial, defendant requested that the state be required to elect whether it would stand upon the charge that defendant agreed to influence the court to dismiss the case, or the charge that he agreed to influence the court to delay proceedings therein. The request was denied.

Before the jury was impaneled, the state, over defendant's objection, was permitted to indorse the names of three witnesses upon the information. No continuance was asked nor any claim of prejudice made.

It developed in evidence that the prosecuting witness, Barron, had been charged in Pierce county, Washing-

ton, with the crime of seduction. He had fled to Montana and had been brought back to Pierce county about March 1, 1917, through extradition proceedings. He had employed an attorney and, under his advice, had entered a plea of not guilty. Through a Mrs. Waters he met defendant at her house on Friday, March 9, 1917. As to what transpired at this and two subsequent meetings, the evidence is in sharp conflict.

Barron, who evidently spoke English with difficulty, testified that, at this first meeting, he told defendant "I got a little trouble;" that defendant answered, "That is all right. I am going to pull you out;" that defendant asked and was told the name of the girl, and offered his services for $550, $300 down, and $250 afterwards; that he then took the name of Barron's attorney and said he would see him and the deputy prosecuting attorney; that Barron then paid $90 to defendant, promising to pay the other $210 on the next Monday. Barron further testified that, on the evening of Monday, March 12, he and a friend, one Sledziewski, went to defendant's room in the Pierce Hotel; that defendant then asked him to pay the money and said, "I have your case and will handle it and get you out," further stating that he had seen the prosecuting attorney, who would not listen, but defendant had gone to the back door of Judge Card's office and talked to him, and Judge Card called in the prosecuting attorney and his assistant and talked to them, after which the assistant prosecutor told defendant he would let him know what they would do; that, at one of these meetings, defendant told Barron not to tell any one of the arrangement because, if found out, defendant would get a fine of $1,000, and that, if a lawyer was needed, defendant would furnish one, as he did not like Barron's then attorney; that, at this meeting of March 12, defendant told Barron the cheapest way was to marry the girl,

otherwise they would send him to the penitentiary; that, if he married the girl, he would not have to live with her; that Barron then said he would think it over and let him know the next day, but paid defendant the $210 at that time; that, next day (he did not state the hour), he went to defendant's room and told him he would marry the girl; that defendant arranged for a meeting with the assistant prosecuting attorney on March 14, when he, defendant, the assistant prosecutor, and a justice of the peace went to the White Shield Home, where the girl was staying, and he there married her. The case was then dismissed.

As to what happened at the second meeting when the $210 was paid, Sledziewski fully corroborated Barron, adding that defendant said:

"That he had certain ways of getting into Judge Card's office and he could do more with Judge Card than people thought, or that (than) other people could; that he could not do anything with the prosecuting attorney's office, but that he could do more with Judge Card's office."

He could not remember whether this was on the evening of March 12, or March 13, 1917.

Defendant denied that he promised to influence Judge Card, or that he claimed that he could do so, or claimed to have access to his office. He testified that there was no agreement as to how the money was to be used, except an understanding that he would endeavor to get two men, who, as Barron told him, had been keeping company with the girl, to testify to that fact and to swear that Barron had not had any relations with her, but that he told Barron he would not allow them to perjure themselves and would not "frame-up on the girl." Yet he testified that, at this same interview of March 12, when Barron paid him the $210 to get this evidence, Barron had admitted, in substance, that he

had seduced the girl under a promise of marriage, and that he at once advised Barron to marry her.

One Jacobson, a friend of defendant, testified that he was present at a meeting in defendant's room on the evening of March 12, or March 13, and that some compromise with the prosecuting attorney's office was talked of, but defendant said nothing about seeing Judge Card. He stated, however, that he understood that the money had been paid the evening before, so that his testimony hardly contradicts that of Barron and Sledziewski.

It is hardly necessary to say that both Judge Card and the prosecuting attorney denied that defendant ever approached them in any surreptitious manner, and it is admitted that he never even spoke to Judge Card or approached him in any way. There was other evidence, but it casts little or no light upon the vital conflict here presented. The jury returned a verdict of guilty. Motions for a new trial and in arrest of judgment were overruled. From the judgment of conviction and sentence, defendant appeals.

It is first contended that the information charges more than one crime. We confess to much difficulty in following appellant's argument on this point. It seems to amount to the following: The statute defining the crime of grafting, Rem. Code, § 2333, specifies three methods in which it may be committed. The terms employed in defining the first and the third methods are in some respects similar. It is urged, therefore, that the information here, charging the commission of the crime substantially in the terms used in the statute in defining the first method, in effect charges its commission by the third method also, and therefore charges two crimes. The statute itself furnishes a sufficient answer to this argument. While the terms employed in the first and third clauses are in some respects similar,

they are far from identical. The specific official acts or conduct, the taking of money under a promise to exert a sinister influence upon which is declared to constitute the crime, are not the same. In the first clause, the influence promised to be exerted upon the officer is to cause him "to refuse, neglect or defer the performance of any official duty." In the third clause, it is to influence the officer "in respect to any act, decision, vote, opinion or other proceeding." Though the method thus described in the third clause may, in general terms, cover that specifically described in the first clause, it is obvious that the first clause does not cover all that is denounced in the third, but is specifically segregated from it. A charge, therefore, couched in the more specific language of the first clause, charges a commission of the crime in the method denounced by that clause alone. Moreover, the statute does not, as counsel assumes, define three crimes. It merely denounces three methods of committing the same crime, and the information in this case clearly charges its commission in the first of these methods only. It charges the commission of but one crime, and in language plainly indicating the manner of its commission. The demurrer was properly overruled.

We find no merit in the further claim that the court erred in refusing to require the state to elect whether it would stand upon a charge that appellant agreed to influence the judge to dismiss the action of State v. Barron, or upon a charge that he agreed to influence a delay of proceedings therein. The information does not charge that he *either* represented that he could, and would, do one or the other of these things, leaving what he promised a matter of doubt, but that he *represented* that he could, and would, do the one or the other, which left no doubt as to the character of the representation. The charge was not in the alternative.

It was a positive charge that he represented that he could, and would, do one of two things in the alternative, both of which are denounced by the statute. The difference is plain. The motion was properly denied.

It is next contended that the court erred in refusing to strike the testimony of Sledziewski as to what occurred at the meeting of March 13, in appellant's room, on the ground that the $210 had been paid before that time. While this witness apparently could not segregate in his own mind just what was said at the meeting of March 12 from what was said at the meeting of March 13, it is clear from his reference to the payment of the $210, which was admittedly made on the 12th, that the conversation touching Judge Card, if it ever took place, took place at the meeting of March 12, and was made as an inducement to the payment of the money. This is further borne out by the testimony of Jacobson that Judge Card's name was not mentioned at the meeting when he was present and that he then understood that the money had been paid the night before. Be that as it may, we agree with the trial court that what transpired at all of these meetings was admissible as bearing upon the nature of the transaction as understood by the parties throughout. 1 Wharton, Criminal Evidence (10th ed.), pp. 501, 502. Even if Sledziewski's testimony as to appellant's representation that he had a means of secret access to the judge's chambers were capable only of the construction that it took place on the evening after that on which money was paid, it would still be admissible as showing that appellant's then attitude was the same as that testified to by Barron of the evening before, when, as Barron said, appellant told him he had already approached the judge by a back door. It was admissible as, in a measure, corroborating Barron's version of that conversation. The motion to strike was properly denied.

Appellant's third contention is that his motion for a directed verdict of acquittal, made at the close of the state's case, should have been granted. As we view it, Barron's testimony alone was sufficient to take the case to the jury. But, as we have just noticed, Barron was corroborated by Sledziewski. True, appellant's representations, as testified to by these men, were made after the first meeting of March 9, but they were made before the payment of the $210 on the evening of March 12, and if then made, which was a question for the jury, their only possible purpose was to induce that payment. It is true, also, appellant testified that this money was paid on his agreement to secure certain evidence, but he admitted that, at the same time, Barron confessed that he had, in fact, seduced the girl under a promise of marriage, so that appellant and Barron both then knew that the desired evidence could not be secured. This is certain if, as appellant further testified, he then told Barron that he would not consent to perjury nor a "frame-up on the girl." The motion for a directed verdict was properly denied.

It is strenuously urged that the court erred in permitting the assistant prosecuting attorney to argue, in substance, that appellant rendered Barron no service for the money. We have read the little of the argument which is set out in the record. In view of the above noticed evidence, we agree with the trial court that the argument was a legitimate comment.

Appellant criticises the court's instructions defining grafting, in that it told the jury, in substance, that an agreement to influence a judicial officer to neglect or defer the performance of his judicial duty would constitute the offense, unless it was understood in good faith that no means should be employed "except explanation and argument upon the merits." It is urged that, under the statute (Rem. Code, § 2333), this excep-

tion applies only to a commission of the crime in the method denounced in the third clause of that section, and not to that denounced in the first clause. Assuming, without deciding, that this criticism is well taken, the addition of the exception was obviously not prejudicial. If error, it was distinctly error in appellant's favor. Other claims of error in the instructions are suggested, but we cannot discuss them in detail. We have examined the instructions with care. We are convinced that they clearly and correctly stated the law as applied to the evidence.

A further claim of error is predicated upon the court's refusal to instruct upon the theory that the gravamen of the offense charged was the intention of appellant to corrupt the judicial officer by the payment to him of money. It seems to us too plain for argument that the statute is capable of no such construction.

We have discussed every assignment of error that appellant has seen fit to discuss in his brief or in the oral argument. We have also examined the assignments which he has not discussed. We can find no ground warranting a reversal.

The judgment is affirmed.

MOUNT, HOLCOMB, and CHADWICK, JJ., concur.