[No. 22075. Department Two. December 16, 1929.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM E. WORSHAM, *Appellant.*[1]

[1]Reported in 283 Pac. 167.

576

*Charles H. Miller,* for appellant.
*Ewing D. Colvin,* for respondent.

MITCHELL, C. J.—The defendant was charged, substantially in the language of the statute, with the crime of grafting, that is, with having willfully and unlawfully asked and received from one Frank O'Hara a certain compensation, gratuity and reward, to wit, the sum of two hundred and fifty dollars, that he could and would directly and indirectly influence certain public officers, to wit, Tom Walsh, a regular police officer of the city of Seattle, and other officers of said city of Seattle, the names of whom are to the prosecuting attorney unknown, in respect to their acts, decisions and proceedings so that W. F. Thompson would not receive a jail sentence for driving and operating an automobile while under the influence of intoxicating liquor, and that the case against W. F. Thompson would not be tried and he, W. F. Thompson, would not be prosecuted or punished for said offense; and that it was not understood between Worsham and O'Hara that no means or influence should be employed except explanation and argument upon the merits. The defendant was found guilty by a jury and has appealed from a judgment on the verdict.

The information was shaped under Rem. Comp. Stat., § 2333, which provides:

"Every person who shall ask or receive any compensation, gratuity or reward, or any promise thereof, upon the representation that he can, directly or indirectly, or in consideration that he shall, or shall attempt to, directly or indirectly, influence any public officer, whether executive, administrative, judicial or legislative, to refuse, neglect, or defer the performance of any official duty; or who shall ask or receive any compensation, gratuity or reward, or any promise thereof, the right to retain or receive which shall be conditioned that such person shall, directly or indirectly, successfully influence by any means whatever any executive, administrative or legislative officer, in respect to any act, decision, vote, opinion or other proceeding, as such officer; or who shall ask or receive any compensation, gratuity or reward, or any promise thereof, upon the representation that he can, directly or indirectly, or in consideration that he shall, or shall attempt to, directly or indirectly, influence any public officer, whether executive, administrative, judicial or legislative, in respect to any act, decision, vote, opinion or other proceeding, as such officer, unless it be clearly understood and agreed in good faith between the parties thereto, on both sides, that no means or influence shall be employed except explanation and argument upon the merits, shall be guilty of a gross misdemeanor, and, in any prosecution, under the third clause of this section, evidence of the means actually employed to influence such officer shall be admitted as proof of the means originally contemplated by the defendant."

First, it is claimed that the court erred in denying motions to strike, as irrelevant, all that portion of the information referring to other officers of the city of Seattle the names of which it was alleged were unknown to the prosecuting attorney, after naming one police officer, or in the alternative to make that portion of the information more definite and certain by setting out the names of such other officers. The information simply sets out the language claimed to have been used

by the appellant while engaged in the alleged act of grafting. He was charged with saying that he could and would unduly influence public officers on behalf of Thompson, who was under arrest. Particular names of the officers were not necessary, the essential thing in this respect being that they were public officers connected with the prosecution of Thompson, and that was alleged in the information, while the allegation that the names were unknown to the prosecuting attorney could in no way have prejudiced the rights of the appellant.

Further, under this assignment, it is claimed the court erred in overruling a demurrer to the information. The argument is that a policeman is not a public officer under the provisions of the statute against grafting. Admitting for the sake of the argument that the sufficiency of the information should be determined by that test, we are of the opinion that the demurrer was properly overruled. Under essentially the same class of statute, Rem. Comp. Stat., § 2320, formerly Rem. & Bal. Code, § 2320, we have held that a police officer is a public officer. *State v. Nick,* 66 Wash. 134, 119 Pac. 15.

During the trial, appellant, in his direct examination, testified that he had been convicted of violating the national prohibition act. On cross-examination he was shown a certified copy of the verdict and judgment in that case, which he admitted to be correct and that he was the person referred to and named therein. The documents were admitted in evidence without objection, whereupon the prosecuting attorney at that time read them to the jury over the objection of the appellant. This the appellant claims was error. In our opinion, the argument is without merit. The instruments being in evidence, it was clearly within the

right of· the prosecution to read them to the jury at that time.

■ The third assignment is that the court erred in denying appellant's motion for a dismissal at the close of the state's case, because of the insufficiency of the evidence to warrant a conviction. This involves the facts in the case, which were substantially as follows:

W. F. Thompson was arrested at night by policeman Tom Walsh for driving an automobile while under the influence of intoxicating liquor while on the streets of Seattle. He appealed to a friend, Frank O'Hara, to provide a bail bond. His friend applied to the appellant, who was engaged in the business of furnishing such bonds for compensation, to furnish the bond. Appellant's place of business at that immediate time was in charge of an agent or representative who, upon speaking with appellant over the telephone, furnished the necessary bail in consideration of seventy-five dollars, forty dollars of which O'Hara paid that night, the remainder being paid by him the next morning. He testified that, on paying the thirty-five dollars, appellant's agent told him he had better stay a while and see Worsham, "maybe he can help you out." That he did wait and shortly appellant came in, whereupon they had a conversation about the matter. O'Hara's account of that conversation was as follows:

"He sat down there and he says to me, 'Now, the least that old man can get,' he says, 'is sixty days in jail and two hundred and fifty dollars fine.' And he says, 'I will tell you'—I said, 'This is nothing to me; he is just a friend of mine, and I don't want to see him go to jail;' I said, 'I got no more money than the law allows.' He says, 'This is just between men. I worked over there with those fellows for fifteen years. What I say over there'—meaning the police station—he says, 'What I say over there,' he says, 'they will do, and'

he says, 'for two hundred and fifty dollars I can fix it up for the old man and he won't have to go to jail.' And I said, 'Well, listen. I am not mixed up in it. It is just because I am a friend of the old man. I know he is a hard-working man;' I says. 'I will tell you what I will do. I will bring him up tonight. I am going to go down to the Washington Iron Works,'—because they had his car in the garage—'I will bring him up in my car and we will stop in here.' He says, 'I will tell you, Mr. O'Hara, there is so many mixed up in it—there is so many saw him,—you have got to pay the arresting officer, the booking officer, the jailer and the elevator boy, and everybody has got to get their divvy out of it.' And I believed him.''

He further testified that he and Thompson went to appellant's office that afternoon and

''.  .  . he (appellant) told Mr. Thompson the same thing, that he had worked over there for fifteen years and that what he said would go. He says, 'For two hundred and fifty dollars I can fix this up and get you out.' Mr. Thompson wanted to get his car, so I asked him about that; when he explained it to Mr. Thompson I said to him, 'When has this got to be fixed?' He says, 'Monday morning before nine o'clock.' ''

Also he further testified that, pursuant to the understanding between them, he went to appellant's office on Monday morning, where the following transaction occurred:

''Q. What did Worsham say? A. He says, 'I will tell you, Mr. O'Hara, he hit a car, and them fellows has been down here raising the devil and they want twenty-five dollars, but we jewed them down to fifteen dollars; so that makes it two hundred and sixty-five dollars.' So I paid him two hundred and sixty-five dollars and he gave me a receipt.''

Thompson corroborated O'Hara, saying in substance that, when they were in appellant's office, appellant said that he had worked in the department, meaning

the police department, and knew the ropes, and that he could fix the case up for two hundred and fifty dollars.

On the contrary, the appellant while on the witness stand, while admitting that he had been a member of the police force eleven years and that he had received two hundred and sixty-five dollars from O'Hara, claimed that the money was for a different purpose than that testified to by the state's witnesses, and he denied their story about his offer to fix the case or influence any public officer.

The testimony on the part of the state was sufficient in our opinion, the jury believing it, to warrant a conviction. The motion to dismiss, therefore, was properly denied. In this connection it may be stated that there is nothing in the record reflecting upon the integrity of any policeman or other public officer.

Assignments four and five relate to an instruction requested to be given that was refused and to certain instructions that were given. The one refused was substantially included in the instructions that were given, while others that were given to which exceptions were taken were proper in that the court therein instructed that a police officer is a public officer in the meaning of the law; that in order to convict the defendant it was not necessary for the state to show that the defendant made any attempt directly or indirectly to unduly influence any public officer; and that it was immaterial whether W. F. Thompson was or was not guilty of the offense for which he had been arrested.

Assignment number six is in no way argued in the brief, though we may say that in our opinion the assignment is without merit.

In another assignment, it is claimed that the court committed reversible error when, in the instruc-

tions, upon referring to the purpose and effect of proof of a prior conviction of crime, the court spoke of conviction of a crime under the laws *of this state,* whereas there was in the case no proof of a former conviction of any crime other than the conviction of the appellant of the violation of the national prohibition act. Clearly this technical error could in no way have misled the jury, nor operate to prejudice the rights of the appellant.

The appellant had a fair trial in our opinion. The motion for a new trial was properly denied.

Affirmed.

HOLCOMB, FULLERTON, MAIN, and FRENCH, JJ., concur.