[No. 27650.   Department One.   December 14, 1939.]

THE STATE OF WASHINGTON, *Appellant*, v. JACK SULLIVAN
*et al., Respondents.*[1]

[1]Reported in 96 P. (2d) 1117.

*B. Gray Warner, John M. Schermer,* and *James W. Mifflin,* for appellant.

SIMPSON, J.—March 13, 1939, the prosecuting attorney of King county filed an information in the superior court of that county accusing the defendants of the commission of the crime of grafting. The charging portion of the information reads as follows:

"They, said JACK SULLIVAN and RICHARD PALMER, and each of them, in the County of King, State of Washington, on or about the 8th day of March, 1939, then and there wilfully and unlawfully did ask and receive from one Bob Hewitt a gratuity, compensation and reward in the sum and of the value of $300 in lawful money of the United States, upon the agreement and understanding that they, the said JACK SULLIVAN and RICHARD PALMER, and each of them, would directly and indirectly influence certain public officials, to-wit: the mayor of Seattle, Arthur B. Langlie, the duly elected, qualified and acting mayor of the City of Seattle; the chief of Police of Seattle, William Sears, the duly appointed, qualified and acting chief of police of the City of Seattle; and the Prosecuting Attorney of King County, B. Gray Warner, the duly elected, qualified and acting prosecuting attorney of King County, and their duly appointed deputies to refuse, NEGLECT AND DEFER THE PERFORMANCE OF his and their official duly of arresting and prosecuting one said John Doe, a Chinese whose true name and identity is at this time unknown to the Prosecuting Attorney, for violating the laws of the State of Washington, relating to the conducting and maintaining of a Chinese lottery."

The case proceeded to trial, and the court at the conclusion of the state's case denied defendants' motion to dismiss and overruled their challenge to the sufficiency of the evidence. After evidence had been taken on their behalf, defendants renewed their motion to dismiss the action. This motion was granted by the trial court.

Shortly afterwards, a formal judgment was entered dismissing the action. The state has appealed.

The record is presented by a bill of exceptions, in which it is shown that the court dismissed the action on the sole ground that the evidence disclosed that the Chinese mentioned in the information had never existed. Respondents had notice of the signing of the bill of exceptions but made no objection to its contents. Neither did they offer or suggest any amendments thereto.

We must assume that the trial court was of the opinion that sufficient evidence had been introduced to take the case to the jury, save and except that relating to the existence of the Chinaman mentioned in the information.

The sole question presented is whether, in order to find the respondents guilty of the crime of grafting, it was necessary for the evidence to show that "John Doe, a Chinese" actually existed.

The charge against respondents was based upon the first provision of Rem. Rev. Stat., § 2333 [P. C. § 9060], which reads:

"Every person who shall ask or receive any compensation, gratuity or reward, or any promise thereof, upon the representation that he can, directly or indirectly, or in consideration that he shall, or shall attempt to, directly or indirectly, influence any public officer whether executive, administrative, judicial or legislative, to refuse, neglect, or defer the performance of any official duty. . . ., shall be guilty of a gross misdemeanor, . . ."

What is the gravamen of the offense as defined by the statute?

On five previous occasions, we have been called upon to construe § 2333: *State v. Marion,* 68 Wash. 675, 124 Pac. 125; *State v. Shea,* 78 Wash. 342, 139 Pac. 203; *State v. Roberts,* 100 Wash. 493, 171 Pac. 225; *State v.*

*Worsham,* 154 Wash. 575, 283 Pac. 167; and *State v. Shay,* 186 Wash. 154, 57 P. (2d) 401; but the precise question presented by this appeal has not before been raised. It is further disclosed through exhaustive research that this problem has not been adjudicated by a court of any other jurisdiction. Indeed, it appears that § 2333 is, in itself, unique.

We turn, then, to the language of the statute itself. Our purpose is to discover the effect and meaning which the legislature intended to ascribe to the language employed.

The statute does not require that the person making the representation do or perform any act in furtherance of the scheme proposed by him. The public official to which § 2333 has reference need not have participated in any manner. It is immaterial whether or not he has actually been influenced. He need not have been approached, nor have had any knowledge of the promise made to exert the corrupting influence, and the crime yet be complete.

It is not necessary that the state show, in cases where the promise is made to exert influence in favor of the one accused of crime, that such person is, or is not, guilty. *State v. Worsham, supra.*

We have already determined that the essence of the crime of grafting is not dependent upon the existence of an intention on the part of the accused to exert the condemned influence upon the public officer. In *State v. Roberts, supra,* we stated:

"A further claim of error is predicated upon the court's refusal to instruct upon the theory that the gravamen of the offense charged was the intention of appellant to corrupt the judicial officer by the payment to him of money. It seems to us too plain for argument that the statute is capable of no such construction."

Of similar import is this language from *State v. Shay, supra:*

"We think the proof offered [that appellant Shay did not know any of the jurors, except the appellant Kinnear, and that he did not intend to influence any of the jurors by bribery or otherwise] was immaterial, for the state made no claim that either Shay or Kinnear in fact attempted to corrupt or influence any of the jurors. Such proof is unnecessary to constitute the crime of grafting, as defined by Rem. Rev. Stat., § 2333 [P. C. § 9060]. Intention to corrupt the jury was not the gravamen of the offense charged in the information. *State v. Roberts,* 100 Wash. 493, 171 Pac. 225."

It is plain to us that the essence of the offense denounced by the statute involves a relationship from which the public official is completely excluded. The crime is complete through a transaction involving only the person who asks or receives the compensation, and him to whom the offer is made or from whom the compensation is received. The public officer and his official duty are ancillary to the ultimate nature of the statute.

It may well be that one of the purposes which the legislature had in mind in enacting this statute was to protect the public by preventing the corruption of public officials. On the other hand, we believe that § 2333 was primarily designed to prevent the use of influence over public officials, either actual or feigned, as a means for extracting money from individuals willing to attempt the purchase of coercion of that character.

The problem relates not so much to the question of who is to be protected or who is to be influenced, as it does to the reason and purpose assigned for securing the money.

With these principles of law in mind, we must hold that it was not necessary in the instant case to prove

that there existed the Chinaman who was to be protected from prosecution for conducting and maintaining the Chinese lottery.

The judgment is reversed, and the case remanded for a new trial.

BLAKE, C. J., MAIN, BEALS, and ROBINSON, JJ., concur.

