128 N.J. Super. 353 (1974)
320 A.2d 177
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
VINCENT FERRO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1974.
Decided May 16, 1974.
*355 Before Judges CARTON, LORA and SEIDMAN.
Mr. Gerold P. Boswell, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. VanNess, Public Defender, attorney).
Mr. Robert W. Gluck, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by CARTON, P.J.A.D.
This appeal primarily involves the issue of whether, as a prerequisite to conviction under N.J.S.A. 2A:93-6, the State must show that the person charged with giving or receiving money or other thing of value as a bribe was a public official at the time of the offense. Defendant contends that this question must be answered in the affirmative and, consequently, his conviction must be reversed.
Inasmuch as the issue is one of law, we refer only to the salient features of the record.
In one count of the indictment defendant was charged with receiving or offering to receive $250 from one Vincent Salerno as a bribe to obtain, through use of his apparent power and influence, actions by the Probation Department of Hudson *356 County and dispositions in the New Jersey courts favorable to Salerno. The second count charged that defendant received or offered to receive $500 from one Robert Onysko as a bribe to obtain, through the use of his apparent power and influence, actions by the prosecutor's office and disposition in the New Jersey courts favorable to Onysko.
The State adduced testimony concerning numerous meetings between defendant and Messrs. Salerno and Onysko in which discussions of agreements of the kind charged in the indictment took place. Prior to these meetings body microphones were concealed on Salerno and Onysko with their permission. The conversations were monitored and taped by a detective of the State Police. Testimony by the detective as to the contents of the tapes, corroborated by Salerno and Onysko, constituted the bulk of the State's case.
Defendant testified that he had been the leader of the Democratic party in a certain section of Jersey City since 1950, but held no government position, although he had once been chief security officer for Hudson County. Defendant stated that Salerno had approached him to see what he could do about a postponement and defendant advised him to see an attorney and to obtain letters from reputable citizens in his behalf. He explained that he had introduced Salerno to a doctor because Salerno claimed he was ill. Defendant denied, as maintained by the prosecution's witnesses, that he stated he would secure a medical certificate and would intervene with the probation officer. He further denied receipt of any bribe and stated that Salerno had loaned him $100 and Onysko had loaned him $400. He also claimed that he had rejected a request from Salerno to fix the case, saying to him, "no such possibility existed." He also asserted that both men informed him he was taped and sought to force his cooperation through threats.
The jury found defendant guilty on both counts after deliberating 40 minutes.
The statutory provision under which the indictment was returned against the defendant provides:
*357 Any person who directly or indirectly gives or receives, offers to give or receive, or promises to give or receive any money, real estate, service or thing of value as a bribe, present or reward to obtain, secure or procure any work, service, license, permission, approval or disapproval, or any other act or thing connected with or appertaining to any office or department of the government of the state or of any county, municipality or other political subdivision thereof, or of any public authority, is guilty of a misdemeanor. [N.J.S.A. 2A:93-6].
The two-count indictment largely parallels the language of the statute charging defendant with committing like offenses with respect to the two individuals in that he;
knowingly, willfully and corruptly did receive, offer to receive, and promise to receive money, * * * as a bribe, present, and reward to obtain, secure, and procure services, permission, approval, disapproval and other acts, and things connected with and appertaining to offices and departments of the government * * *, that is, the use of his apparent power and influence to obtain actions by the Probation Department * * * and dispositions in the Courts * * *, all in violation of the provisions of N.J.S.A. 2A:93-6.
Our research has disclosed no legislative statement or history which might assist us in arriving at the legislative intent. Consequently, we are left to apply customary rules of construction of legislative acts.
It is elementary that penal statutes will be strictly construed. See, e.g., State v. Carbone, 38 N.J. 19 (1962). The rule of strict construction, however, does not prevent a court from reading the statute in relation to the mischief and evil sought to be suppressed or prevent a court from giving effect to the terms of the statute in accordance with their fair and natural acceptation. State v. Meinken, 10 N.J. 348, 352 (1952); State v. Frost, 95 N.J. Super. 1 (App. Div. 1967). Thus, the clear implication and intendment of a penal statute cannot be denied. Nor will a construction which will aid the evasion of the provision be favored. Id. at 3.
Applying these principles, the statute in question must be given its most evident and reasonable meaning consonant with legislative intendment. Significantly, N.J.S.A. 2A:93-6 *358 applies to "any person" who offers (solicits), promises or actually receives (or gives) a bribe. Clearly the phrase, "any person," cannot be read to mean any governmental official, even in the context of being the recipient of the bribe. Such a construction would require reading into the statute, after the word "person," the modifying or limiting phrase, "who, being a public official" or "who is a public official." The modifying or limiting terms embodied in the statute are that the bribe must be "to obtain, secure or procure" any act or thing "connected with or appertaining to any office or department of the government." Notably, the language omits any requirement that the prohibited action involve the actual participation of an official. Rather, the bribe must be directed towards official action. The offender, as the recipient of the bribe, must only have or create an understanding with the briber that he can influence matters in connection with an official duty. Whether he is capable of actually effecting such an act is irrelevant. Cf. State v. Sherwin, 127 N.J. Super. 370 (App. Div. 1974).
In the latter context. it has been observed that N.J.S.A. 2A:93-6 does not require that the person receiving the bribe do so "under the color of his office," as does the section proscribing statutory extortion. N.J.S.A. 2A:105-1. "The offense of receiving a bribe under N.J.S.A. 2A:93-6 is complete upon a showing that defendant received a thing of value as a bribe to procure any act appertaining to any office or department of the government." State v. Sherwin, supra at 385; emphasis supplied.
Defendant points to the fact that the common law offense of bribery could only be predicated on a reward to a judge or other official concerned with the administration of justice. State v. Ellis, 33 N.J.L. 102 (Sup. Ct. 1868); State v. Begyn, 34 N.J. 35, 47 (1961). He argues that this element of the crime of common law bribery became an essential part of the statute when bribery became a statutory offense and that concept has been carried through in the later revisions of the legislation. These later enactments, it is *359 proffered, simply expanded the class of individuals who may be charged with this offense to include legislators, executives and administrative officers, labor officials and foreman, participants in sporting contests, referees and umpires in sporting contests. See N.J.S.A. 2A:93-2 et seq. Basically, defendant's thesis is that we must construe N.J.S.A. 2A:93-6 in light of the common law definition of bribery, and that the statute merely broadens the class of the office-holders who may be charged therewith but does not alter the nature of the crime or its elements.
Defendant argues that the basis for enacting L. 1898, c. 235, § 30,[1] from which N.J.S.A. 2A:93-6 was later derived, was to fill the void left by the common law, i.e., to punish the mere solicitation of a bribe by a public official. Cf. State v. Begyn, supra at 47-48. However, the legislative codification of the bribery laws belies this contention. Certainly, if that were the Legislature's intention, § 30 would have been framed in language similar to that employed by § 28 (now N.J.S.A. 2A:93-4), enacted by the Legislature at the same time. That is to say, the section would simply have read "any public official" (see § 28) rather than "any person" who solicits a bribe.
The very language of N.J.S.A. 2A:93-6 upon which defendant's convictions rest compels a broader application than that advanced by him. The most reasonable interpretation of this provision is that it was designed to broaden the offense of bribery so as to include the peddling of influence by a *360 person in an apparent position of access to a public official. Such activity is not penalized by the common law. Yet, being a common evil which denigrates the integrity of our public institutions, the Legislature undoubtedly intended to proscribe such conduct. Any contrary construction ignores not only the literal wording of the statute but the obvious intent of the Legislature. Compare N.J.S.A. 2A:93-6 with N.J.S.A. 2A:93-3.
Later legislatures also recognized a social interest in keeping certain types of nonofficial action free from corrupting influences. This interest extended not only to corruption in relation to public office, but also to corruption of other individuals in positions of trust. See N.J.S.A. 2A:93-7, 8, 10, 11, 12, 13 and 14. However, since § 30, supra (L. 1898, c. 235) only encompassed influence-peddling in connection with governmental activity, further expansion of the common law was necessary to reach those forms of bribery which did not involve governmental action. Thus, later legislatures enacted statutes which penalized bribery of a labor representative (L. 1911, c. 94, § 1, now N.J.S.A. 2A:93-7), bribery of a foreman (L. 1911, c. 94, § 2, now N.J.S.A. 2A:93-8), bribery of and receipt of a bribe by a participant in a sporting contest (L. 1945, c. 217, §§ 1 and 2, now N.J.S.A. 2A:93-10 and 11), and bribery of a referee in a sporting contest (L. 1946, c. 28, § 1, now N.J.S.A. 2A:93-13).
The early bribery statutes were recodified in the revision of 1937. The amendment to § 30 is of pertinent concern. It provided:
Any person who shall directly or indirectly give or receive, or promise or agree to give or receive, any money, goods, chattels, real estate, or any other thing, present or reward, to secure or obtain, or to give out or grant the printing of blanks, notices, advertisements or any other printing, or any other work or thing connected with or appertaining to any office or department of the government of the state or of any county, municipality or other political subdivision thereof, shall be guilty of a misdemeanor. [R.S. 2:114-6]
*361 It is apparent that only minor changes were effectuated by the foregoing revision. Such is not the case, however, in the 1952 codification of Title 2A which considerably expanded the scope of this section. That legislation proscribed specified activities directed towards "* * * obtain[ing], secur[ing] or procur[ing] any work, service, license, permission, approval or disapproval, or any other act or thing connected with or appertaining to any office or department of the government * * *." N.J.S.A. 2A:93-6. This final amendment, although broader in scope, in no wise altered the original intent of the statute. In fact, it specifically included the term "bribe" and described the governmental conduct sought to be effected by unlawful means in more general terms. The enactment of N.J.S.A. 2A:93-6 can thus fairly be considered to have completed a legislative scheme which has become apparent over the years, i.e., to penalize those in an apparent position of trust who would utilize their position or relationship to influence some governmental activity of public official. It is entirely consistent with that scheme for the Legislature to seek to reach the activities of would-be as well as actual brokers of corruption along with officials and others implicated in corrupt arrangements.
State v. Sullivan, 2 Wash.2d 1, 96 P.2d 1117 (Sup. Ct. 1939). See also, People v. Woodward, 136 Cal. App. 149, 28 P. 2d 36 (D. Ct. App. 1934), which held that a statute which is analogous to N.J.S.A. 2A:96-3 did not require involvement of a public official.
Authority for this view may be found in State v. Sullivan, supra, where the Washington Supreme Court construed a statute similar to the one before us holding that its statute did not require that a public official be in any way involved in the bribe. What the Washington court said with respect to the statute before it for interpretation is equally applicable to this case:
* * * On the other hand, we believe that § 2333 was primarily designed to prevent the use of influence over public officials, either *362 actual or feigned, as a means for extracting money from individuals willing to attempt the purchase or coercion of that character [corruption of public officials].
Accordingly, we hold that it is not necessary to a conviction under N.J.S.A. 2A:93-6 that the person charged with giving or receiving the payment be a public official.
Defendant also maintains, under the plain error rule, that the prosecutor made improper and prejudicial remarks on summation justifying a new trial. The prosecutor stated:
To be honest with you, in my relatively short legal career I've tried over two hundred criminal cases. I have to be honest now. I don't know what to say. It's just that this case, this evidence, I submit, is so overwhelming, so clear-cut, so convincing, so accurate and truthful, no reason to doubt anything, that it would be insulting your common intelligence * * *.
This comment, as well as the prosecutor's references to "what you have running around in Hudson County, etc.," were obviously improper as tending to suggest that the prosecutor had personal knowledge of guilt from his expertise and wholly aside from the evidence produced at trial. See State v. Farrell, 61 N.J. 99, 103-104 (1972). However, we are not satisfied that these improprieties were of the dimension of plain error or had the clear capacity to produce an unjust result. State v. Macon, 57 N.J. 325, 335-336 (1971); State v. Hipplewith, 33 N.J. 300, 314 (1960). Cf. State v. DiPaglia, 64 N.J. 288, 297 (1974).
Affirmed.
NOTES
[1] This statutory provision provided:

Any person who shall directly or indirectly give, or receive, or promise, contract or agree to give or receive, any sum or sums of money, or any goods, chattels, gift, lands or real estate, or any other thing, present or reward whatsoever, to secure or obtain, or to give out or grant the printing of blanks, notices, advertisements or any other printing, or any other work or thing, connected with, or in or appertaining to any office or department of the government of this state, or any office or department of the government of any county, city, town, township, borough or other place in this state, shall be guilty of a misdemeanor.