129 N.J. Super. 588 (1974)
324 A.2d 588
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN REPP, AND HOWARD J. STILES, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 21, 1974.
Decided August 15, 1974.
*590 Before Judges HANDLER, MEANOR and KOLE.
Mr. Leonard A. Cinaglia, attorney for appellant, John Repp.
Mr. Edward J. Dimon, Assistant Deputy Public Defender, argued the cause for appellant, Howard J. Stiles (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Robert H. Klausner, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. George F. Kugler, Jr., former Attorney General of New Jersey).
The opinion of the court was delivered by MEANOR, J.A.D.
Once again an appellate court is asked to construe New Jersey's Gun Control Law, N.J.S.A. 2A:151-1 et seq., sustained as constitutional in general in Burton v. Sills, 53 N.J. 86, 28 A.L.R.3d 829 (1968), app. dism. 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969). As has been recently and aptly noted, this is a statute "not without its obscurities." State v. Hatch, 64 N.J. 179, 186 (1973).
The indictment here, as amended, charged that the defendants "did unlawfully carry in an automobile a certain firearm to wit: a shotgun without first having obtained a requisite firearms Purchaser Identification Card contrary to the provisions of N.J.S.A. 2A:151-41."
The convictions from which these appeals ensue arise out of events that took place in the early morning of Saturday, April 10, 1971, in the Borough of Clementon. The State's case was presented through the testimony of Francis A. Dailey, a Clementon patrolman. At 12:45 A.M., while in a patrol car, he saw a vehicle owned by defendant Howard J. Stiles pull into the parking lot of the Clementon Borough Hall. Defendants Stiles, Charles LaPollo and John Repp exited from the Stiles car, ran to another vehicle in the lot and "threw open the driver's door and the passengers' door." *591 Dailey's investigation revealed the presence of a shotgun in the front seat of Stiles' car. None of the defendants could produce a firearms purchaser identification card.
The essential facts of the State's case were not disputed. The defense was to the effect that LaPollo owned a gas station in Lindenwold which was open 24 hours a day. On Friday, April 9, 1971 the two couples, Linda and John Repp, and Victoria and Howard J. Stiles, arrived at LaPollo's station sometime late in the evening. LaPollo was not there, the station being attended by his employee Horace Lederman. At this point those present thought that there was an attempt to break into the rear of the station. Lederman called LaPollo and asked for some protection. LaPollo lived nearby and arrived at the station just as a police car was pulling up. The station was searched to no avail.
LaPollo owned a shotgun which he had taken to Stiles' apartment the night before in order to clean it with Stiles' cleaning kit. The gun had been left there by LaPollo who asked Stiles if it could be returned, ostensibly to provide the protection that Lederman requested. Stiles asked his wife to go to their apartment in Stratford and bring the gun to the station. She did so, taking the Stiles automobile and was accompanied by Linda Repp. On the way to the Stiles apartment the two women were followed by a vehicle whose driver was sounding its horn and blinking its lights. When the Stiles vehicle stopped, the occupants of this vehicle tried to "pick-up" Linda Repp and Victoria Stiles. Mrs. Stiles was grabbed by one of their accosters and dragged a few feet. This "pick-up" attempt was reported to the Stratford police who investigated.
Following her husband's instructions, Mrs. Stiles put the LaPollo gun in a guncase and attached Stiles' hunting license to it. Because they were upset by the "pick-up" attempt, Mrs. Stiles and Linda Repp agreed to stop for coffee at the Repp apartment. En route there they passed the borough parking lot in Clementon where they saw the vehicle whose *592 occupants had been involved in the incident outside the Stiles apartment. They immediately went to LaPollo's gas station and informed their husbands of the occurrences. The three men, Stiles, Repp and LaPollo, entered the rear seat of the Stiles car which was driven to the parking lot. After their arrival and approach to the vehicle thought to contain the men who had tried earlier to "pick-up" Mrs. Repp and Mrs. Stiles, Officer Dailey and other police came upon the scene.
LaPollo, Linda Repp, John Repp and Stiles were indicted for violation of N.J.S.A. 2A:151-41 (b). Linda Repp's case was severed and the three men were convicted. Only Repp and Stiles are involved in this appeal.
LaPollo contended that he was not required to have a firearms purchaser identification card since the shotgun had been acquired from his father before August 5, 1966, the date upon which the statutory requirement of a firearms purchaser identification card became effective. Repp and Stiles joined in this defense, urging that as alleged joint possessors they were entitled to share in the legal possession by LaPollo of the shotgun without the requirement of a purchaser identification card. The trial judge refused to honor these arguments, ruling them unavailable as a matter of law.
The 1966 amendments to N.J.S.A. 2A:151-1 et seq. for the first time brought into our statutes a requirement that a firearms purchaser identification card be obtained before a rifle or shotgun could be acquired.
Permits to purchase a pistol or revolver and firearms purchaser identification cards are issued by the chief of police if the applicant resides in a municipality which has an "organized full-time police department," and in all other cases by the Superintendent of State Police. N.J.S.A. 2A:151-34. This statute requires that "No person of good character and who is of good repute in the community in which he lives, and who is not subject to any of the disabilities set forth in this section or other sections of this chapter, shall be denied a permit to purchase a pistol or revolver or a firearms *593 purchaser identification card * * *." The statute goes on to deny permits or cards to those convicted of a crime, narcotics addicts, inmates of mental hospitals, habitual drunkards, to those suffering certain physical and mental disabilities, and to those under age 18. See Weston v. State, 60 N.J. 36 (1972).
It might also be noted that a separate permit must be obtained for each purchase of a pistol or revolver, but the number of rifles and shotguns that may be acquired under the authority of a single firearms purchaser identification card is unlimited. N.J.S.A. 2A:151-39. It is quite clear, however, that the Legislature did not intend to impose any requirement for a permit to carry a rifle or shotgun. The statement appended to the bill containing the 1966 amendments says in part:
The new act does not require registration of rifles and shotguns, nor is there a requirement for a permit to carry a rifle or shotgun. There is only a check on the person who desires to purchase such weapons.
The above statement is not quite accurate, for N.J.S.A. 2A:151-32 is clear that acquisition by any means, and not only by purchase, must be preceded by the obtaining of a purchaser identification card. The only exception is set forth in N.J.S.A. 2A:151-32(C) which permits one who acquires a firearm by testate or intestate succession temporarily to possess it without first obtaining a purchaser's permit or identification card.
N.J.S.A. 2A:151-41 must, of course, be strictly construed. State v. Carbone, 38 N.J. 19 (1962); State v. Provenzano, 34 N.J. 318 (1961). If that statute is read in isolation, it can be thought to require a firearms purchaser identification card in order to carry any rifle or shotgun in an automobile, including a weapon acquired before the effective date of the 1966 amendments requiring a firearms purchaser identification card as a prerequisite to acquisition of a rifle or shotgun. However, N.J.S.A. 2A:151-41 cannot *594 be read in isolation, but must be construed in pari materia with the other statutes contained in our gun control legislation. No fair reading of these statutes would lead one to believe that any circumstances existed that would require a firearms purchaser identification card for a previously possessed weapon. The thrust of this legislation is to prevent future acquisition of firearms by those thought not suitable to have them. If there was any legislative intent to reach past acquisitions, the major theme of the statute would not have been identification of the purchaser but rather registration by the possessor. By making the marked distinction between permits to carry handguns and permits to purchase (acquire) rifles and shotguns, it is obvious that the Legislature had no intention to have the firearms purchaser identification card double as a permit to carry.
The Legislature, by providing in N.J.S.A. 2A:151-41 that possession, under the circumstances set forth, of a rifle or shotgun was to be a crime unless the possessor first obtained a firearms purchaser identification card "in accordance with the provisions of this chapter" was directing its attention only to rifles and shotguns acquired on or after August 5, 1966, for it is only to such acquisitions that the card is a prerequisite.
This construction means that an individual with a previously possessed rifle or shotgun has the same legal liberties with respect to it as does one who possesses such a weapon validly acquired pursuant to a firearms purchaser identification card. This construction does not render nugatory the exceptions to N.J.S.A. 2A:151-41 set forth in N.J.S.A. 2A:151-42. The latter statute permits certain defined uses and places of possession of firearms without the necessity of a card or permit. This statute at least would be applicable to travelers through the State and to possession of a firearm in New Jersey which had been acquired without the State after August 5, 1966. State v. Hatch, supra, 64 N.J. at 187.
*595 Thus, LaPollo's position that he did not need a purchaser identification card because of his preexisting possession of the weapon should not have been ruled invalid, and he should have been given the opportunity to present his proofs on the point. Procedurally the contention that the firearm in question was acquired before the requirement for a firearms purchaser identification card came into existence should be handled in the same manner as the defense contention that a required permit to carry had in fact been issued. State v. Hock, 54 N.J. 526, 536-537 (1969), cert. den. 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970), and cases cited therein.
If LaPollo's position that a purchaser's card was not required of him is honored, then his co-defendants', all alleged joint possessors with him of the same firearm, will also be protected. We believe it would be arbitrary in a case of joint possession of a firearm by the owner thereof and others to hold that, while the owner is protected by an identification card or by the lack of a necessity to have it, his joint possessors are guilty of a crime. Cf. State v. Humphreys, 54 N.J. 406 (1969). Of course, in order for Repp and Stiles to obtain exclusive possession of the shotgun from LaPollo, either singly or jointly, a card would be required. N.J.S.A. 2A:151-32.
Reversed and remanded.
KOLE, J.S.C., Temporarily Assigned (concurring).
Before the 1966 Gun Control Law there were only two types of permits relating to firearms  (1) a permit to purchase a pistol or revolver and (2) a permit to carry a pistol, revolver "or other firearm." The permit to carry was required in order that a concealed weapon  whether a pistol, revolver, shotgun or rifle  be legally carried; otherwise, the defendant was guilty of a misdemeanor. State v. Nerwinski, 69 N.J. Super. 239 (App. Div. 1961), cert. den. 369 U.S. 825, 82 S.Ct. 841, 7 L.Ed.2d 790 (1962). See N.J.S.A. 2A:151-32, 41, 44 and 45 before their amendment by *596 the 1966 act. Although prior to the 1966 act there was authority and a statutory requirement for a permit to carry a concealed rifle or shotgun, there was no requirement or authority for a purchase permit for these weapons. The 1966 act eliminated the permit to carry a concealed rifle or shotgun and created three distinct "licenses" with respect to firearms: (1) a permit to purchase, required to acquire a pistol or revolver; (2) a firearms purchaser identification card to acquire a rifle or shotgun, and (3) a permit to carry a pistol or revolver. It also imposed more specific standards for the issuance of both the permit to purchase and the firearms identification card than had existed prior thereto for the permit to purchase a pistol or revolver; and imposed more restrictive conditions for the issuance of a permit to carry a pistol or revolver based on need. It eliminated the prerequisite that the proscribed weapons  whether a handgun or a shotgun or rifle  be concealed in order to constitute a crime under N.J.S.A. 2A:151-41, and changed the crime from a misdemeanor to a high misdemeanor. N.J.S.A. 2A:151-32 to 36, 44 to 45, inclusive. State v. Hatch, 64 N.J. 179 (1973); State v. Johnson, 125 N.J. Super. 344 (App. Div. 1973), mod. on other gds. 65 N.J. 388 (July 9, 1974). It is apparent, therefore, that State v. Nerwinski, supra, no longer governs the applicability of N.J.S.A. 2A:151-41, as amended in 1966, to rifles or shotguns.
I am satisfied from the foregoing and the reasoning of the Judge Meanor's opinion that as to these defendants (1) the trial judge erred in not permitting proofs as to whether the shotgun was acquired by La Pollo before or on or after August 5, 1966, and (2) if it were acquired prior to that date, defendants should be acquitted unless the jury were to find that they  Repp and Stiles  obtained exclusive possession of the shotgun from La Pollo, either singly or jointly. Thus, the convictions should be reversed and the matter remanded for a new trial.
*597 Although I am not too clear as to the full implications of State v. Hatch, supra, it seems to point in this direction when it states that "persons with hunting licenses may carry guns used by them for hunting provided the guns are securely concealed while being transported; indeed they may do so * * * even without holding firearms purchaser identification cards so long as they did not purchase or receive the guns in New Jersey subsequent to the 1966 passage of the Gun Control Law." 64 N.J., supra at 187 (emphasis supplied).
I would hold, however, "in the absence of legislative clarification or modification" (cf. State v. Hatch, supra at 189), that prospectively a factual setting arising after the date of this opinion similar to that presented before us would constitute a violation of N.J.S.A. 2A:151-41 (b) even though the rifle or shotgun were acquired prior to August 5, 1966.
When apprehended the owner of the shotgun (La Pollo, who has not appealed) and Repp and Stiles (who have) were carrying it in the car with Stiles' hunting license attached thereto. The evidence plainly supports a finding that all three defendants thus were endeavoring to comply with the hunting exception to the statute even though they were not going hunting. N.J.S.A. 2A:151-42 (c). If, as claimed, the shotgun were being repaired or cleaned by Stiles under N.J.S.A. 2A:151-42(a), this particular requirement of the hunting exception need not have been complied with.[*] Again, if, in fact, defendants were actually going hunting, as that term is commonly and legislatively *598 understood, when they joined in the search of the men who had endeavored to pick up Mrs. Repp and Mrs. Stiles, this hunting prerequisite to carrying the shotgun in the car was inapplicable. The inescapable conclusion is that the trip by the automobile containing the shotgun fortunately was aborted by the police before its mission was accomplished.
The salutary purpose of the Gun Control Law of 1966 to insure public safety by reason of the inherent dangers associated with firearms, has been recently adverted to in State v. Hatch, supra. In view of this, absent further legislative action to the contrary, I would hold that under these or similar circumstances in the future, a defendant may not seek refuge in the happenstance of when he acquired the rifle or shotgun. See also State v. Sisti, 62 N.J. Super. 84, 88 (App. Div. 1960); State v. Ferro, 128 N.J. Super. 353 (App. Div. 1974). Even though a defendant acquired the shotgun in New Jersey before August 5, 1966, his act of possessing it in an automobile where such possession was not within any of the exceptions in N.J.S.A. 2A:151-42 or 43 should not hereafter be considered a lawful carrying of firearms in this State. If he desires to carry any such weapon in a vehicle, in order to comply with N.J.S.A. 2A:151-41 he must first obtain a firearms identification card. Some measure of control is thereby afforded the State over such persons, in accordance with the basic aim of the 1966 Gun Control Law.
The obscurities in this area with which we have been compelled to deal make it fundamentally unfair to apply the foregoing interpretation retroactively to these defendants, charged with a high misdemeanor, even though I am satisfied that they had some knowledge of the 1966 statute.
NOTES
[*] There is no sound basis for the claim defendants make that the firearm was being transported from a place where repairing is done to a place of business or from a dwelling place (La Pollo's) to La Pollo's place of business within N.J.S.A. 2A:151-42(a), or that the course of travel in any of these respects involved a reasonable or necessary deviation from the course of travel to and from any such areas. N.J.S.A. 2A:151-42(c). The weapon was never left at La Pollo's service station after being taken from Stiles' home; it remained in the vehicle while defendants attempted to pursue the alleged accosters.