THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOHN T. TEMPLE, PLAINTIFF IN ERROR.

Argued February 21, 1899—Decided June 12, 1899.

Upon the trial of an indictment framed under the two hundred and seventy-second section of the Crimes act (*Gen. Stat.,* p. 1100), charging a fraudulent conversion of money by an agent who had lawfully collected it, there was testimony on the part of the defendant that he retained the money as a fund upon which he had a lien for services rendered as an attorney-at-law. *Held*—

1. That the intent to convert the money was an essential element of the state's case.

2. That it was error to refuse so to charge, and that the error was not cured by an instruction that the defendant had a right to retain the money under his lien, if that was the reason he retained it.

On error to Mercer Oyer and Terminer.

Before MAGIE, CHIEF JUSTICE, and Justices GARRISON, LIPPINCOTT and COLLINS.

For the state, *William J. Crossley,* prosecutor of the pleas.

For the defendant, *Edwin Robert Walker.*

The opinion of the court was delivered by

GARRISON, J. The plaintiff in error, an attorney of this court, was convicted at the May Term, 1898, of the Mercer Oyer and Terminer, of the embezzlement of $70, the moneys of Rosa Lanning, collected by him as her agent.

The indictment was based upon section 272 of the Crimes act. *Gen. Stat., p.* 1100.

The entire record of the proceedings in the trial court in this case is before this court upon a writ of error, brought up under section 170 of the Criminal Procedure act. *Gen. Stat., p.* 1154.

It is not, however, necessary to examine the evidence adduced upon the trial of this indictment for the purpose of determining whether the defendant has suffered manifest wrong and injury by the action of the jury, inasmuch as the judgment must be reversed for error of law.

The statute under which the defendant was indicted reads as follows: " That if any consignee, factor, bailee, clerk, employe, agent or servant entrusted with the collection or care of any money, shall fraudulently take and convert the same, or any part thereof, to his own use, or to the use of any person or persons whatsoever, excepting the rightful owner thereof, he shall be deemed guilty of a misdemeanor." The indictment follows the wording of the statute. All of the averments of the state's charge were admittedly true excepting the fraudulent conversion. The sole issue was whether the defendant, by retaining the money he had collected, was guilty of the criminal conduct known as conversion. Upon this issue there was pertinent testimony each way. On the side of the state there was the testimony of the principal that her agent had not paid the money to her and had said to her that he had not got the money from her tenants. This latter statement was denied by the defendant, who testified that his original delay in settling with his client was due to the pendency of negotiations with her mortgagee authorized by her, and that he, the defendant, as an attorney-at-law, had a lien upon his client's money on account of which he retained it. The jury was instructed that the defendant had " a right to keep in his hands money which he had collected for his client, or for his principal, for the purpose of securing the payment of the debt which she should owe him or did owe him." The jury were also told that this reason must

have existed and have been the cause of the withholding of the money in order to afford any protection to the defendant, and that "after the money was gone it was too late to create that reason." This instruction was in different ways given to the jury, and the question finally left with it was whether the defendant, after he had collected the money, fraudulently appropriated it to his own use. The real question in the case, therefore, was the intent with which the money had been retained. The intent to convert the money was an essential element of the embezzlement charged. 10 *Am. & Eng. Encycl. L.* (*2d ed.*) 996.

It was the specific criminal element that made the retention fraudulent. Unless the jury were satisfied of its existence, beyond a reasonable doubt, the state had not legally established the defendant's guilt. *State* v. *Lyon*, 16 *Vroom* 272 ; *State* v. *Fitzgerald,* 21 *Id.* 475 ; *Burnett* v. *State*, 31 *Id.* 255.

It was the defendant's right to have the jury so instructed. The charge of the court was silent as to "intent," and a specific request upon this point, preferred by the counsel for the defendant, was denied. It is no answer to say that the jury had been told that the defendant's lien gave him a right to retain the money, if that was the reason he retained it; for by such instruction the mere circumstances under which it was claimed that the money was retained were treated as an affirmative defence, thereby shifting to the defendant the burden of proof and relieving the state of its duty to prove every essential element of its case beyond a reasonable doubt. This error which appears by a bill of exceptions is obviously injurious, and because of it the judgment must be reversed.