THE STATE v. JOSEPH DEUTSCH.

Submitted December 5, 1908—Decided February 23, 1909.

1. Upon the trial of an indictment for fraudulent conversion of money by a bailee, under section 184 of the Crimes act (*Pamph. L.* 1898, *p.* 844), the state must establish a contract of bailment, and when there is evidence justifying an inference that the actual contract was that of banker and depositor upon a general deposit, it is erroneous to charge that the moneys were not received by the defendant as a banker, even though he may not be legally authorized to conduct the business of banking.

2. Where money is left as a general deposit under a contract as between depositor and banker, there is no conversion to sustain a conviction under section 184 of the Crimes act, until there is at least proof of demand for the money and a refusal to pay.

3. Where money was deposited with defendant as a banker and he subsequently fled the country, leaving funds sufficient to meet the amount of the deposit, which were subsequently seized by his creditors, he cannot be convicted of a fraudulent conversion of the specific deposit for the conversion of which he is indicted, merely because of his refusal to repay the same.

4. One who obtains property fraudulently may be guilty of larceny, even though the intent of the parties is to pass the title, since the fraud prevents the title from actually passing.

On error to Middlesex Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and TRENCHARD.

The defendant was convicted upon an indictment the first count of which charged that he, being the bailee and agent of John Kmonezky, was entrusted by said Kmonezky with the care of the sum of $80, the property of Kmonezky, as such bailee and agent, and having said moneys in his possession, fraudulently took and converted the same to his own use, with intent to defraud Kmonezky. There were four other counts in similar form except as to the date and the amount of the alleged conversion. The indictment is framed under section 184 of the Crimes act (*Pamph. L.* 1898, *p.* 844), which enacts as follows:

"Any consignee, factor, bailee, agent or servant entrusted with the care or sale of any personal property, or entrusted with the collection or care of any moneys, who shall fraudulently take or convert the same, or the proceeds of the sale of the same, or any part thereof, to his own use, or to the use of any other person or persons whatsoever except the rightful owner thereof, shall be guilty of a misdemeanor."

At the trial there was evidence justifying, if it did not require, an inference that Deutsch was doing business as a private banker, and that the moneys in question were deposited with him as a banker. He was compelled, upon cross-examination, to testify that he had no license from the commissioner of banking and insurance. The proof as to the deposits by Kmonezky with him was of deposits at various dates between August 12th and December 9th, 1906. In January, 1907, Deutsch was taken severely ill, and for a time had to entrust the management of his business to clerks. In February his affairs seemed to be in confusion, whether through his own

fault or through the acts of his clerks, was a disputed question. In February he drew out a considerable portion of his deposits in the First National Bank of Perth Amboy and in the Perth Amboy Trust Company and sailed for Holland, where he was subsequently found and brought back, under proceedings for extradition. At the time he went away he had on deposit a balance in the First National Bank of $253.47, which was reduced the next day to $128.47, by a check which he had given to a man named Shappo, for which he seems to have received the cash at the time. His deposit in the Perth Amboy Trust Company was in two accounts, one an individual account, in which his balance was only eighty-nine cents; the other an account kept in the name under which he was doing business, in which the balance soon after his departure was $28.82. He also left a considerable sum in cash, which seems to have been, at least, $400. The total amount deposited with him by Kmonezky was $190, and, as far as the evidence shows, he always had on hand, from the time of the deposits until after his departure, enough cash, either in his business place or in the two banks, to pay the amount due Kmonezky. It was undisputed that the deposits in the banks at or about the time of each deposit by Kmonezky were more than sufficient to include Kmonezky's deposit. Kmonezky's money was mingled with that of other persons, and either loaned by Deutsch or invested in merchandise for a store which he was conducting as a part of his business. The trial judge allowed the state, over objection, to prove that Deutsch, on the eve of his departure, told his clerk that he had embezzled moneys belonging to people. The testimony was given in German, and the word translated "embezzled" was "veruntreut," but there was no proof of an admission by him that he had embezzled Kmonezky's money, as distinguished from that of all the depositors. The trial judge charged the jury that the defendant was not entitled to have them find that he was conducting a banking business as a private banker because he was not authorized by the State of New Jersey to conduct a bank, and he added:

"The legal situation, as disclosed by the evidence, is that the moneys were received by him as bailee or agent of John Kmonezky, and not as a banker, and you must consider the statement of the court as binding upon you in this case."

This charge was duly excepted to. He further charged that if the money was received as a deposit, to be taken care of by Deutsch and returned when demand was made, and it was converted by Deutsch to his own use feloniously, he would be guilty of embezzlement. The jury, after being out some time, returned into court with the following question:

"If the defendant, on leaving the country, left behind him enough money to cover the sum, can he be found guilty of embezzlement?"

To this the judge responded:

" 'To establish such a case a general deficiency in the defendant's cash account is a step towards complete proof,' as I told you before. Now, you may take into consideration the evidence of the defendant that at the time he was taken ill and left his business he had the sum of $900 on deposit. If you find that those moneys were in his possession as bailee and agent, then you must inquire whether he has converted that $900 or any portion thereof. If you find that he has not sufficient moneys left to pay the amount which he admitted he had when he left the country, then you find the deficiency in his cash account. Do I make myself clear? That is an element which you may consider in determining whether or not he feloniously and fraudulently embezzled the sum of $190. You do not, in other words, have to find that a specific sum of just so much money was embezzled. You have to find that he embezzled the sum of $190, but to find that you may use the general deficiency in his cash as a step towards the complete proof of the alleged act of embezzlement."

To this there was an exception, and there is a general exception to the charge.

For the state, *George Berdine,* prosecutor of the pleas.

For the plaintiff in error, *Charles T. Cowenhoven.*

The opinion of the court was delivered by

SWAYZE, J. In order to convict the defendant under the indictment it was necessary for the state to prove that he was the bailee or agent of Kmonezky, and that he fraudulently took or converted Kmonezky's money to his own use. Under the facts of the case, as far as appeared at the trial, the defendant could not be found guilty upon the ground that he was the agent of Kmonezky nor upon the ground that he fraudulently took the money. If convicted at all, it could only be upon the jury finding that he was the bailee of Kmonezky and fraudulently converted the money. Whether he was the bailee or not depended upon the contract between them at the time of the deposits. In determining this question it was important to the defence to prove that Deutsch received the money as a banker, for if he did the relation between him and Kmonezky was that of debtor and creditor and not that of bailee and bailor. As Mr. Justice Miller said in *Marine Bank* v. *Fulton Bank,* 2 *Wall.* 252:

"All deposits made with bankers may be divided into two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter; and that other kind of deposit of money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker; and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount or any part thereof on demand."

The same view was expressed by the Court of Appeals of New York in *Craige* v. *Hadley,* 99 *N. Y.* 131, and by Vice Chancellor Pitney in *Perth Amboy Gas Light Co.* v. *Middlesex County Bank,* 15 *Dick. Ch. Rep.* 84. The rule is so well settled that it is unnecessary to cite further authorities. The trial judge recognized the rule but thought it was not applicable to the present case, because the defendant was not legally authorized to transact a banking business. This view was erroneous. The very act which makes it a misdemeanor to carry on the business of banking without authority contemplates that the business may be so carried on, and

if the view taken by the trial judge were right it would be impossible to secure a conviction for transacting the banking business without authority, for the defendant would have a complete answer if he could say that he was not conducting the banking business because he was not authorized to do so. The question whether he was conducting the banking business was a question of fact; he might do it either legally or illegally, and the trial judge erred in taking this question from the jury. The distinction between a bailee of money and a banker is that the bailee is bound to keep the money as it is and return the identical money, or at least to retain the amount and have it always ready, while a banker is entitled to use the money as his own and to loan it out, holding himself ready to make it good when called for.

It was not only incumbent upon the state to prove that Deutsch was a bailee of the money but to prove that he converted it to his own use. If the contract was a contract with him as a banker, he had the right to mingle the moneys as he did with the moneys of other depositors, and there could be no conversion at least until there had been a demand upon him and a refusal to pay. *Fitzgerald* v. *State,* 21 *Vroom* 475.

There is nothing in *State* v. *Reynolds,* 36 *Vroom* 424, to the contrary. That case recognizes the necessity of proving a fraudulent conversion, and holds that there are other ways of proving it than by demand and refusal. One of the ways suggested is where it appears by the evidence that the embezzler has fled after the alleged embezzlement, and that his acts and conduct were of such a character in connection with his flight as to indicate that his intent was to fraudulently take or convert the funds which he retained. In the present case the acts and conduct of Deutsch, so far as the conversion of Kmonezky's money is concerned, were that he left sufficient money in this country to meet Kmonezky's claim, and his subsequent refusal to pay was due, not to a conversion of the money by him, but to the fact that it had, after his departure, been seized by other creditors. This was a risk which Kmonezky ran, if, by his contract, he permitted his funds to be mingled with those of other creditors.

In order to sustain a conviction it was necessary to prove not only that Deutsch was a bailee of Kmonezky and that he converted Kmonezky's money to his own use, but that he did it fraudulently. Proof of a criminal intent was essential. *State* v. *Temple,* 34 *Vroom* 375.

The whole case, therefore, of the state depended upon the nature of the agreement between Kmonezky and Deutsch, and this question was taken from the jury by that portion of the charge of the trial judge to which reference has already been made. The quotations from the charge, and especially the reply to the significant question put by the jury upon their return into court, and the admission of the testimony that Deutsch had embezzled the money of the people, make it quite clear that the trial judge permitted a conviction of the defendant for a general shortage in his accounts with his customers, and not for the particular offence of fraudulent conversion of Kmonezky's money, which was charged in the indictment. There was no reason in this case justifying the admission of evidence as to other crimes—the embezzlement of the money of other people.

Our statute follows the language of the English act. 24 and 25 *Vict., ch.* 96, § 3; 2 *Russ. Cr.* (*9th Am. ed.*) 247. The cases cited by Mr. Russell on pages 247, 248 and 249 amply sustain the view which we have expressed. *R.* v. *Hoare,* 1 *F. & F.* 647; *R.* v. *Garrett,* 8 *Cox C. C.* 368; *R.* v. *Hassall, L. & C.* 58; reported also in 30 *L. J., C. L.* 175, and in 8 *Cox C. C.* 491; *R.* v. *Hunt, Id.* 495.

The judgment must be reversed and the record remitted for a new trial. We have not found it necessary to pass upon the alleged error of the court in refusing to allow the defendant to interpose a plea that the offence alleged in the indictment was not the one for which the extradition of the defendant could have been secured. We think that the judge was right in refusing at the time and under the circumstances to allow this plea to be interposed, but as the case must be tried again, and this question may again arise, it may be well to call attention to the fact that the treaty with the Netherlands permits a man to be tried, after his surrender, for another crime, if it

be one of those enumerated in the treaty. Larceny is one of the enumerated crimes. The indictment in this case contained five several counts for larceny, corresponding to the five counts for embezzlement. A man may be found guilty of larceny who obtains property fraudulently, even though the intent of the parties is to pass the title, for, upon ordinary principles of law, the fraud prevents the title from passing. 2 *Russ. Cr.* 214. It would seem from the judge's charge and the stenographer's notes that a *nolle pros.* was entered as to these counts, but the formal record returned with the writ of error does not show it, and we must, therefore, assume that the counts for larceny still remain.