IN THE MATTER OF DOMINICK A. MIRABELLI,
AN ATTORNEY-AT-LAW.

Argued January 9, 1979—Decided May 23, 1979.

*Mr. Richard J. Engelhardt,* Assistant Secretary, argued the cause for the Disciplinary Review Board.

*Mr. Warren W. Wilentz* argued the cause for respondent (*Messrs. Wilentz, Goldman* and *Spitzer,* attorneys).

PER CURIAM. These disciplinary proceedings originated in a complaint filed March 22, 1978 by the Union County Ethics Committee. An Answer was filed in due course and the matter was processed thereafter by the District Ethics Committee for District XII (*R.* 1:20 covering discipline of members of the bar having become effective on April 1, 1978). That Committee's action was prompted by respondent's guilty plea, on November 9, 1977, to a State Grand Jury accusation charging him with bribery in violation of *N. J. S. A.* 2A:93–6.

At the time of his plea and during the proceedings before the local committee respondent admitted that he received the sum of $2500 from one Robert J. Delaney (known to respondent as Robert Convery), an undercover law enforcement official. The money was paid on behalf of respondent's client, Patrick J. Kelly, for the ostensible purpose of bribing a named Union County Assistant Prosecutor to procure a non-custodial sentence with respect to certain criminal charges then pending against Kelly in Union County Court.

On March 2, 1978 respondent was sentenced to New Jersey State Prison for a maximum term of three years and a minimum term of one year. The court suspended execution of the sentence, placed respondent on unsupervised probation for a period of three years conditioned upon respondent's making restitution to the State of New Jersey for the cost

of its investigation, and assessed a fine of $1,000. In imposing sentence the court took into account the serious emotional, physical and psychological problems suffered by respondent and of the impact upon him of a short-lived and tumultuous second marriage, despite which his support and affection for his seven children remained steadfast. It further observed that there was no indication of any actual attempt to bribe the Assistant Prosecutor, but rather that the bribery story was used as a ploy to extract a large fee from the client.

Upon the entry of the guilty plea this Court temporarily suspended respondent from the practice of law, effective January 20, 1978.

We amplify the background and details of respondent's involvement by resorting to the Findings and Conclusions of the District Ethics Committee as follows:

In explanation of his present involvement, Mr. Mirabelli testified that Robert J. Delany (which was apparently an alias being used by a state police undercover agent) came to him a few years ago to have a corporation formed for purposes of running a trucking business. Patrick J. Kelly was apparently an employee of that trucking company although not aware that Delany was an agent of the state police. In any event, in 1975, Kelly was indicted by the Union County Prosecutor's Office for involvement in certain alleged mortgage transactions. Kelly asked respondent to represent him in that matter in October of 1975. According to respondent, his fee was represented to be somewhere between $10,000.00 and $15,000.00 and he asked for a $2,500.00 retainer. Kelly produced the sum of $1,500.00. Thereafter, negotiations to work out a plea bargain were conducted by respondent in behalf of Kelly and according to respondent he continued to press Kelly for continuing payments to cover the legal services being rendered. By the middle of January, 1977, respondent felt that he could work out a recommendation of a non-custodial sentence for Kelly providing Kelly would agree to make restitution. Kelly agreed to restitution but he wanted it on terms. Respondent was unsure whether or not these could be arranged. In the meantime, respondent continued to worry about his inability to collect what he felt was reasonable payment for the services he was rendering. According to respondent, he then represented to Kelly that by paying $2,500.00 to the Assistant Prosecutor in charge of the case, a non-custodial sentence could be arranged. This the re-

spondent testified was an untruth which he concocted for the sole purpose of effecting payment for his legal services. He was apparently confident that the non-custodial sentence could be worked out and by representing to Kelly that a bribe was necessary he could realize the sum of $2,500.00 which he would keep in payment for his services. This information was conveyed to Kelly who said that he could arrange for the payment of the bribe through his employer, Delaney. Respondent then arranged to meet Delaney in the corridor of the Union County Court House on February 15, 1977 where he received the sum of $2,500.00 in cash. It was not until months later that respondent found out that Delaney was in fact a state police agent who exposed the entire scheme.

While it was willing to accept this recitation in the light most favorable to respondent, the District Ethics Committee was nevertheless troubled by one other facet of this illicit enterprise:

At the time he received the bribe, respondent was a member of a law firm with whom he was associated apparently in partnership. The Committee notes that assuming Mr. Mirabelli's explanation of why the bribe money was sought was in fact true, the sum of $2,500.00 would ordinarily have been deposited in his firm's account. Upon questioning, however, Mr. Mirabelli stated that he kept the $2,500.00 in his possession "more or less intact" until it was surreptitiously removed at a later date by his second wife after a marital dispute. Respondent has no idea what his former wife may have done with the money; however, according to him it was never returned.

Based on all of the foregoing the local Committee concluded that respondent had violated DR 1–102(A)(1), (3), (4), and (5), dealing with specific types of misconduct; DR7–102(A)(7) and (8), requiring the representation of a client within the bounds of the law; and DR9–101(C), dictating that even the appearance of impropriety must be avoided ("A lawyer shall not state or imply that he is able to influence improperly or on irrelevant grounds any tribunal, legislative body, or public official.").

The District Ethics Committee's presentment reciting the aforementioned violations was heard *de novo* on the full record by the Disciplinary Review Board (DRB), *R.* 1:20–

3(e). The Board recognized that the sole issue before it was the measure of discipline to be recommended, and that while respondent's prior commendable civic and professional accomplishments (which had been spread on the record before the local committee) were impressive, nevertheless consideration of those achievements could not in any way excuse respondent's conduct. The DRB recommended that respondent be suspended from the practice of law for two years, retroactive to January 20, 1978, the effective date of his temporary suspension.

■ We likewise, as was the DRB, are concerned only with the discipline to be imposed, inasmuch as respondent admits the findings of the District Ethics Committee. While it is not at all clear that respondent's conduct falls within the four corners of the bribery statute, *N. J. S. A.* 2A:93–6,[1]

----

[1]The argument would go that the deceived client was not induced to pay money for *respondent's* exercise of corrupt influence, but rather was led to believe that respondent was simply the conduit through which money would be paid to some third party in consideration of that person's exercise of influence in the client's behalf. Whatever the client's intention, it does not appear that respondent ever entertained any intention of paying over the $2500 to anyone to induce official action favorable to his client. The entire scheme was nothing more — nor anythnig less — than respondent's ruse to insure and accelerate payment of his fee.

That such conduct may not amount to bribery under *N. J. S. A.* 2A:93–6 was recognized in *Illario v. Frawley*, 426 *F. Supp.* 1132 (D. N. J. 1977). In *Illario* the United States took the position that a union official should be disqualified from holding union office, pursuant to 29 *U. S. C.* § 504, because he had pled guilty to acts constituting bribery under *N. J. S. A.* 2A:93–6. In making that contention the government relied on *State v. Ferro*, 128 *N. J. Super.* 353 (App. Div. 1974). But Judge Stern pointed out that

[i]t is not at all clear from the *dicta* in *Ferro*, however, that New Jersey courts would extend the ambit of the bribery statute to include the act to which plaintiff confessed, namely, the corrupt receipt of money through a *false* promise to influence governmental action. The facts in *Ferro* support the inference that the defendant in that case did intend to attempt to influence governmental activity in return for the receipt of the money. No case has ap-

we need not resolve that issue in the context of this disciplinary proceeding and we go no further than to note the question for it is our practice to accept a criminal conviction as conclusive evidence of guilt. *In re Isserman,* 9 *N. J.* 269, 277–78; *In re Mischlich,* 60 *N. J.* 590, 593. In any event, the glaring fact remains that his actions were calculated to breed a public image of corruption of the legal profession and the judicial process — conduct calculated to demean the bar and bring it into disrepute.

In approaching the grave matter of appropriate discipline we are not unmindful of respondent's distinguished background in civil life and public affairs, including his six years service as a special assistant to the Union County Prosecutor, seven years as a member of the Elizabeth Board of Education (four of those years as President), three years as Union County Counsel, and manager for the successful reelection campaign of a United States Senator (an unpaid position involving personal entrustment with funds approximating two million dollars). The record below is embellished with testimony as to respondent's good name and integrity. Likewise have we taken into account the apparent ravaging effects upon Mr. Mirabelli's emotional stability of his marital problems, which it is claimed, not unreasonably, adversely affected his judgment.

Were it not for these mitigating circumstances and the fact that respondent has at all stages conceded his guilt and cooperated throughout with the ethics machinery of this Court, we would be seriously inclined to disbar — a suggestion which indicates our feeling that the infraction is even more serious than as perceived by the DRB, on whose recommendation we place very great weight. The offense against the public and the legal profession might well warrant that

plied the New Jersey bribery statute to a situation in which the promise of influence was deceitful from the outset.
[426 *F. Supp.* 1139 n. 3 (emphasis in original).]

ultimate discipline. See *In re Thompson,* 67 *N. J.* 26, 33 (1975). Giving due consideration to all of the factors involved we conclude that the interests of the public will be properly served by respondent's suspension from the practice of law for a period of three years from January 20, 1978, the date of his temporary suspension, and until further order of this Court. See *In re Caruso,* 67 *N. J.* 44 (1975).

So ordered.

*For suspension*—Justices MOUNTAIN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—5.

*Opposed*—None.