Nathan NASS, Plaintiff,

v.

LOCAL 348, WAREHOUSE PRODUCTION, SALES AND SERVICES EMPLOYEES UNION and Ray Marshall, Secretary of Labor of The United States, Defendants.

No. 79 C 1625.

United States District Court, E. D. New York.

Dec. 16, 1980.

Rappaport & Frost, New York City, for plaintiff.

O'Connor, Quinlan & Mangan, P. C., for Local 348, by J. Warren Mangan, Long Island City, N.Y.

E. R. Korman, U.S. Atty., E.D.N.Y. by Abraham Y. Skoff, Asst. U.S. Atty., Brooklyn, N.Y., for defendant, Marshall.

## MEMORANDUM & ORDER

PLATT, District Judge.

This is an action by plaintiff, Nathan Nass, to permanently enjoin the defendant, Local 348, Warehouse Production, Sales and Services Employees from discharging him from union office pursuant to the direction of defendant, Ray Marshall, Secretary of the United States Department of Labor. Jurisdiction is predicated on the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401–531. Plaintiff has moved for a preliminary injunction barring his dismissal. Defendant Marshall has cross–moved pursuant to Fed.R.Civ.P. 56 for summary judgment dismissing the complaint on the merits. Defendant Local 348 has filed briefs and affidavits in support of the position of the plaintiff in both motions.

## I

Plaintiff has been employed as Secretary–Treasurer of the defendant union since he was first elected to the post in October 1966. In 1975 plaintiff was indicted in the Supreme Court of the State of New York, County of New York, for, *inter alia*, Grand Larceny by means of Extortion (Indictment 5616/75) and Conspiracy to Commit Labor Bribery (Indictment 5617/75). On February 24, 1978, plaintiff pleaded guilty to Indictment 5617/75 in satisfaction of all charges against him. On March 28, 1978, plaintiff was sentenced to pay a fine of $500.00 and was simultaneously granted a certificate of relief from civil disabilities under New York Correction Law § 701 (McKinney 1972).

In November 1978, the United States Department of Justice advised plaintiff and the defendant union that in view of plaintiff's conviction for conspiracy to commit labor bribery, he was no longer able to hold union office by virtue of 29 U.S.C. § 504. That section, set forth more fully below, bars the holding of union office by one who has been convicted of a crime involving misuse of union office.

In June 1979, plaintiff commenced this action and, by notice of motion dated June 21, 1979, sought a preliminary injunction against his discharge. In view of the fact that plaintiff had filed an appeal of his conviction with the Appellate Division, First Department, of the Supreme Court of the State of New York, and that plaintiff had not yet received official notice of termination, this Court denied the motion without prejudice to renew. Plaintiff's appeal was dismissed by the Appellate Division on February 14, 1980. On August 13, 1980, the defendant union notified plaintiff that he would be terminated. In light of these developments, plaintiff now renews his complaint and application for an injunction.

## II

The sole question for determination in this matter is whether the certificate of relief from civil disabilities issued under New York Correction Law § 701 by the State court judge at the time plaintiff was sentenced on the criminal charges bars the application to plaintiff of 29 U.S.C. § 504.*

29 U.S.C. § 504 bars from union office all persons who have

---

\* Plaintiff also contends that the issuance of a § 701 certificate prevents the adjudication of guilt from rising to the level of a "conviction" so as to call into operation the provisions of § 504. This contention is without merit. It has been repeatedly held, both in this Circuit and by the New York State courts, that the granting of a certificate of relief from civil disabilities in no way eradicates or expunges the un-

derlying conviction. *See, e. g., Rehman v. Immigration and Naturalization Service*, 544 F.2d 71, 74 (2d Cir. 1976) (Opinion for the court by Lumbard, J.); *United States v. DiNapoli*, 557 F.2d 962 (2d Cir.), *cert. denied*, 434 U.S. 858, 98 S.Ct. 181, 54 L.Ed.2d 130 (1977); *DaGrossa v. Goodman*, 72 Misc.2d 806, 339 N.Y.S.2d 502 (Sup.Ct.1972).

... been convicted of, or served any part of a prison term resulting from his conviction of, robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, assault which inflicts grievous bodily injury, or a violation of subchapter III or IV of this chapter, or conspiracy to commit any such crimes, ...

\* \* \* \* \* \*

[for] five years after such conviction or after the end of such imprisonment, unless prior to the end of such five–year period, in the case of a person so convicted or imprisoned, (A) his citizenship rights, having been revoked as a result of such conviction, have been fully restored, or (B) the Board of Parole of the United States Department of Justice determines that such person's service in any capacity referred to in clause (1) or (2) would not be contrary to the purposes of this chapter. Prior to making any such determination the Board shall hold an administrative hearing and shall give notice of such proceeding by certified mail to the State, county, and Federal prosecuting officials in the jurisdiction or jurisdictions in which such person was convicted. The Board's determination in any such proceeding shall be final. No labor organization or officer thereof shall knowingly permit any person to assume or hold any office or paid position in violation of this subsection.

New York Correction Law § 701 provides:

1. A certificate of relief from disabilities may be granted as provided in this article to relieve a first offender of any forfeiture or disability, or to remove any bar to his employment, automatically imposed by law by reason of his conviction of the crime or of the offense specified therein. Such certificate may be limited to one or more enumerated forfeitures, disabilities *or* bars, or may relieve the first offender of all forfeitures, disabilities and bars. Provided, however, that no such certificate shall apply, or be construed so as to apply, to the right of such person to retain or to be eligible for public office.

2. Notwithstanding any other provision of law, a conviction of a crime or of an offense specified in a certificate of relief from disabilities shall not cause automatic forfeiture of any license, permit, employment or franchise, including the right to register for or vote at an election, or automatic forfeiture of any other right or privilege, held by the first offender and covered by the certificate. Nor shall such conviction be deemed to be a conviction within the meaning of any provision of law that imposes, by reason of a conviction, a bar to any employment, a disability to exercise any right or a disability to apply for or to receive any license, permit or other authority or privilege, covered by the certificate.

3. A certificate of relief from disabilities shall not, however, in any way prevent any judicial, administrative, licensing or other body, board or authority from relying upon the conviction specified therein as the basis for the exercise of its discretionary power to suspend, revoke, refuse to issue or refuse to renew any license, permit or other authority or privilege.

 It is plain from § 701 that if plaintiff were about to suffer a forfeiture of employment based upon New York law, the policy expressed in § 701 would bar such a forfeiture. In this case, however, 29 U.S.C. § 504 reflects a federal policy concerning the governance of union conduct, a field which Congress has entered through an extensive legislative scheme. The question is thus whether a State court's determination that an individual should not suffer the loss of certain rights following a conviction may override the intention of Congress to purge unions of illegal influences through the actions of their employees and officers. We conclude that it may not.

 It is a fundamental constitutional principle that where Congress has entered a field it may lawfully regulate, federal law prevails to the extent that State and feder-

al law conflict. U.S.Const. art. VI, cl. 2. It is equally elemental that preemption of State law by Congress need not be expressly stated in the federal legislation. State authority is also curtailed when congressional action serves as an implicit barrier, i. e., when State legislation would interfere unduly with the accomplishment of congressional objectives. *See Malone v. White Motor Corp.*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978). Furthermore, State law may not frustrate the operation of federal law even though the State, in passing its law, had some purpose in mind other than one of frustration. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In this case, Congress has not expressly provided for a preemptory effect of § 504; however, a perusal of the legislative history and case law interpreting § 504 discloses a strong federal policy which cannot be displaced by what under these circumstances is an inconsistent State law.

In *Hodgson v. Chain Service Restaurant*, 355 F.Supp. 180 (S.D.N.Y.1973), the Court stated that in enacting § 504 Congress sought to

> eliminate the intolerable and corrupt conditions which prevailed throughout segments of organized labor during the 1950's.... [T]he legislators [therefore] provided safeguards which they believed would prevent irresponsible and unscrupulous persons from gaining control of union government .... [T]he protagonists in Congress, throughout the entire legislative history, accepted language preventing persons convicted of certain crimes from holding office.

355 F.Supp. at 183. In *Illario v. Frawley*, 426 F.Supp. 1132 (D.N.J.1977) the Court noted that the congressional intent in enacting this legislation was broadly remedial:

> One of the regulatory mechanisms selected by Congress to achieve [the purification of unions] was the proscription contained in § 504, banning certain convicted criminals from holding union office for a period of time after their conviction and sentence. Every one of the [proposed labor] bills contained such a provision.

426 F.Supp. at 1137. It appears therefore that the exclusion from union office of persons convicted of certain crimes was a major part of the legislative scheme to purge unions of corrupt influences. Congress did provide as well for exemptions from the statutory bar in § 504 in certain cases. However, it is clear that that portion of the statute regarding exemption was intended to apply only after the officer had shown that prior to the five–year ban he had been substantially rehabilitated and could so prove to the satisfaction of the Board of Parole of the Justice Department. *See* S.Rep.No.187 on S. 1555, Senate Committee on Labor and Public Welfare, 86th Cong., 1st Sess. 13, Legislative History, Labor–Management Reporting and Disclosure Act of 1959, 1959 U.S.Code Cong. and Admin. News, p. 2318, at p. 2329. *See also Serio v. Liss*, 300 F.2d 386, 389 (3d Cir. 1961).

The facts in this case do not admit of the inference that plaintiff's certificate of relief amounts to a badge of rehabilitation. The minutes of the plea hearing reveal that plaintiff admitted his participation in a conspiracy to accept a bribe from an employer with whom the defendant union was negotiating; that this was done with the understanding that the bribe would influence plaintiff's acts as a union official and cause the union to enter into a collective bargaining agreement favorable to the employer. See Plea Transcript, February 24, 1978, pp. 16–22. This is precisely the type of misuse of union office at which § 504 is aimed.

■ In addition, the mere issuance of a § 701 certificate in no way indicates the finding of trustworthiness or innocent involvement in the underlying crime which the exemption in § 504 requires. This Circuit has so stated in *United States v. DiNapoli, supra*: "The certificate should be issued when it will be an aid to rehabilitation. It does not require ... a determination that the convict has already been rehabilitated". 557 F.2d at 966. Finally, it is obvious that no such determination was made in this particular case, both by a reading of the plea and sentencing minutes and in view of the fact that the certificate

was issued not some time after the conviction and sentence but simultaneously therewith.

Plaintiff's reliance on *Rehman v. Immigration and Naturalization Service, supra,* is misplaced. In that case, Rehman, an alien, pleaded guilty to criminal possession of a controlled substance in the seventh degree. This is New York's lowest grade drug offense. At sentencing, Rehman was fined $100.00 and was granted a § 701 certificate. The issue in that case was whether the issuance of the certificate barred the automatic deportation of an alien convicted of a drug–related crime mandated by 8 U.S.C. § 1251(a)(11). As noted above, a majority of the court refused to accept the proposition that the adjudication was not a "conviction." The majority did hold that Rehman should nonetheless not be deported. This was based upon a judgment by the Court that had Rehman been tried on federal rather than State charges, he would not have been deportable. Two reasons for this were proposed: first, a first–offender guilty of simple drug possession in federal court can be placed on probation rather than convicted and second, Rehman would have been eligible for treatment under the Youth Corrections Act, 18 U.S.C. § 5005 *et seq.,* which would allow for an expungement of the record which the INS would recognize. 544 F.2d at 75.

By that analysis, the court did not intend § 701 of the New York Correction Law to displace the Immigration and Nationality Act. Rather, the Court determined first, that there is within the federal system a leniency policy vis–a–vis first drug–offenders similar to New York's, which would have been invoked had Rehman been brought up on federal charges and second, that where conflicting policies exist within the federal statutory framework as between the leniency of the Youth Corrections Act and the severity of mandatory deportation of drug–abusing aliens, the policy favoring leniency should prevail. In other words, not only would the purposes of the Immigration and Nationality Act not be served by deporting Rehman, but other strong *federal* policies would be impaired were he to be deported.

The circumstances in the instant case are quite different. First, whereas in *Rehman* the court noted that deportation statutes are to be strictly construed against the INS, 544 F.2d at 74, n. 6, by contrast, anti–corruption labor legislation is broadly remedial. *See Illario v. Frawley, supra,* at 1137. Second, and of crucial importance, the fact remains that in this case plaintiff has admitted to engaging in precisely the type of conduct that Congress had decided should preclude him from holding union office. Although § 504 intrinsically provides for relief from the bar it creates, Congress has determined what shall constitute eligibility for lenient treatment, and Congress has set forth strict procedures for establishing rehabilitation and trustworthiness. We are presented not with conflicting federal policies but with a conflict between State and federal policies. To allow a certificate of relief from civil disabilities issued by the State concurrently with the pronouncement of sentence for a crime involving corruption of a union officer to bar the operation of § 504 would be to frustrate and override federal law in violation of the Supremacy Clause.

### III

In view of the foregoing, plaintiff's motion for a preliminary injunction is denied. The motion by defendant Marshall for summary judgment and dismissal of the complaint on the merits must be, and hereby is, granted.

So ordered.